UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BEN JAMIL; HSS DEVELOPMENT; CYBER
COMMUNICATIONS GROUP,

                Plaintiffs,

           -against-

AFAN OMAR SHERWANI; MASROUR
BARZANI; ASO, LLC; ASO1, LLC;
HALLORAN, FARKAS, KITTILA, LLP;
JONATHAN MOORE; THEODORE KITTILA;
WAYSI BARZANI; KHASRO, WASMAN,
AKA KHASROU; JOHN AND JANE DOES 1-
5; JEFFREY GREILSHEIMER,

                Defendants.

26-CV-1654 (GBD)

ORDER OF DISMISSAL

---

GEORGE B. DANIELS, United States District Judge:

On February 27, 2026, Plaintiffs Ben Jamil, HSS Development, and Cyber Communications Group commenced this *pro se* action under 42 U.S.C. § 1983, the Foreign Agents Registration Act, and the Foreign Corrupt Practices Act. In the complaint, Plaintiffs allege that Defendants violated their rights by initiating criminal contempt proceedings against them in state court and by failing to register as agents of a foreign government. Plaintiffs also assert claims under New York law. They seek $560 million in damages and injunctive relief in the form of an order staying all related state court proceedings and vacating their orders.

By order dated March 5, 2026, the Honorable Laura Taylor Swain, to whom this action was then assigned, noted that only natural persons may proceed *in forma pauperis* ("IFP")—that is, without prepayment of fees—under 28 U.S.C. § 1915, and directed Plaintiffs to pay the filing fees in this action within 30 days of that order. (ECF No. 5.) Plaintiffs did not pay the fees, and therefore, on April 17, 2026, the court dismissed this action without prejudice due to Plaintiffs' failure to pay the filing fees. (ECF No. 13.) On April 23, 2026, the Clerk of Court entered judgment

of dismissal. (ECF No. 14.) Plaintiff Jamil thereafter moved for reconsideration, arguing that he submitted an IFP application and attaching the IFP application that he allegedly filed. (ECF No. 15.) Although the court could find no evidence that Plaintiff Jamil submitted an IFP application within the 30-day leave period, in light of Plaintiff Jamil's *pro se* status and his clear intention to proceed with this case, by order dated May 18, 2026, Chief Judge Swain granted Plaintiff Jamil's motion to the limited extent of vacating the order of dismissal and judgment as to him. (ECF No. 16.)   The order also confirmed that Plaintiffs HSS Development and Cyber Communications Group remain dismissed from this action. (*Id.* at 2.) The court subsequently granted Plaintiff Jamil's IFP application. (ECF No. 17.) This action was thereafter reassigned to my docket.

For the reasons that follow, the Court dismisses the complaint in its entirety.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

2

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following facts are drawn from the complaint.[1] This action concerns "Defendants' unlawful scheme to interfere with Plaintiff's contractual relations and business operations through unlawful kickback demands, unregistered foreign agent activity, and the weaponization of criminal contempt proceedings in a state civil action." (ECF No. 1, at ¶ 1.)

Plaintiffs do business in Manhattan and allege that they entered into a contract with ASO, LLC, which is owned by ASO1, LLC, in Manhattan. (*Id.* at ¶¶ 14-15, 51.) All Defendants were allegedly aware of requirements of the contract. (*Id.* at ¶ 52.) "Defendants demanded a $360,000 (sic) from the Memorandum of Understanding and an additional amount to be paid which for (sic) their personal benefit from the contract." (*Id.* at ¶ 53.) Plaintiffs characterize Defendants' demand as one for "unlawful kickback[s]" and states that they constitute "bribery of foreign officials" prohibited by FARA. (*Id.* at ¶ 54.)

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

Plaintiffs contend that they were nevertheless "ready, willing, and able to perform [their] contractual obligations," but Defendants prevented them from doing so. (*Id.* at ¶ 75.) Plaintiffs first attempted a demonstration of a product or service at issue in the contract, but it failed due to a poor internet connection. Defendants did not readily permit Plaintiffs another opportunity for a demonstration of their product or service, which Plaintiffs allege caused them $11 million in damages. (*Id.* at ¶ 76.)

Plaintiffs allege that in depositions in related state-court litigation, Defendants testified that their attorneys were acting as foreign agents. For instance, the allegations include "Afan Sherwani's role as an 'employee' and intelligence spy for Kurdistan Regional Government with the beneficial owner a foreign principal, Masrour Barzani and Waysi Barzani." (*Id.* at ¶ 55.) Moreover, "ASO, LLC and ASO1, LLC were shell 'front' companies to obfuscate espionage activity targeting private citizens in the U.S. and other areas where electronic security such as described in the contract is considered espionage." (*Id.*) Finally, "Khasro Wasman, known as the 'General' in Whatsapp correspondence to Plaintiffs and email, in public documents and reports, has maintained his role as spy chief for Kurdistan Regional Government for decades." (*Id.*) Plaintiffs allege that none of Defendants registered with the Department of Justice as foreign agents, as allegedly required by FARA. (*Id.* at ¶ 57.) Plaintiffs also allege that Defendants represented that their corporate entities—presumably referring to ASO, LLC and ASO1, LLC— were commercial entities, when in reality, they "functioned as a front organization on behalf of the Barzani foreign principals[.]" (*Id.*) Similarly, Plaintiffs allege that ASO, LLC represented that it was a *bona fide* commercial entity, but in fact, it was controlled by the Kurdistan Regional Government. (*Id.* at ¶ 66.)

After Plaintiffs refused to provide Defendants with the requested "kickbacks," they sought to retain counsel to assist them in related state-court litigation against Defendants. As part of Plaintiffs' efforts to retain counsel, they "shar[ed] the case file and exhibits with numerous lawyers." (*Id.* at ¶ 62.) In apparent response, "Defendants invoked state judicial authority by pursuing criminal contempt sanctions against Plaintiff" in state court. (*Id.* at ¶ 45.) Plaintiffs allege that in seeking criminal contempt, Defendants were motivated to intimidate Plaintiffs in order to prevent them from cooperating in other civil litigation pending against Defendants.[2] (*Id.* at ¶ 46.) Plaintiffs allege that "Defendants acted under color of law by invoking criminal contempt powers in state court proceedings, thereby exercising coercive governmental authority." (*Id.* at ¶ 10.)

## DISCUSSION

### A.   Claims for injunctive relief

Plaintiff Jamil seeks an order staying the state-court proceedings and vacating all orders that the state court has issued. In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Heicklen v. Morgenthau*, 378 F. App'x 1, 2 (2d Cir. 2010) (quoting *Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973)). *Younger* abstention is appropriate in three categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in

---

[2] According to a decision in this court in related litigation between some of these same parties, ASO, LLC sought to hold HSS Development and Cyber Communications Group in criminal contempt in state court "for allegedly releasing copies of the deposition transcripts from the state court action to a third party, in violation of the Westchester County Supreme Court's Confidentiality Orders." *ASO, LLC v. Jamil*, No. 26-CV-1966 (KMK), 2026 WL 972923, at *2 (S.D.N.Y. Feb. 20, 2026). This Court notes that Plaintiffs, in this action, have attached to the complaint deposition transcripts from the state court action.

5

enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013).

Criminal contempt proceedings have long been considered to be akin to criminal prosecutions. *Bloom v. Illinois,* 391 U.S. 194, 201 (1968) ("Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both."). Criminal prosecution is the paradigmatic example of an important state interest under the *Younger* doctrine. *See Younger,* 401 U.S. at 45–49. The Supreme Court has held that states also have an important interest in their civil contempt process. *See Juidice v. Vail,* 430 U.S. 327, 335 (1977) ("A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest.").

While Plaintiff seeks this Court's intervention into his ongoing criminal contempt proceeding in state court, *Younger* prohibits it. The Court therefore abstains from exercising jurisdiction of Plaintiff Jamil's claims for injunctive relief that would have the effect of intruding into the ongoing state criminal contempt proceedings.

## B.    42 U.S.C. § 1983

Plaintiff Jamil seeks to hold Defendants liable under Section 1983 and alleges that they acted under color of law by initiating and prosecuting a criminal contempt proceeding against him or his associated corporations in state court.

To state a claim under Section 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are therefore generally not liable under Section 1983. *Sykes v. Bank of Am.,* 723 F.3d 399, 406 (2d Cir. 2013) (per curiam) (citing *Brentwood Acad. v. Tenn. Secondary Sch.*

*Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

The activity of a private person or entity may be considered state action for the purpose of Section 1983 liability in the following situations: (1) when the person or entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) when the state provides significant encouragement to the person or entity, the person or entity willfully participates in joint activity with the state, or the person or entity's functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) when the state has delegated a public function to the person or entity (the "public function test"). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012).

The fundamental question under each test is whether the private person or entity's challenged actions are "fairly attributable" to a state or local government. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). When analyzing whether a private person or entity functions as a state actor under Section 1983, a court must first "identify[ ] the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." *Id.* (internal quotation marks and citation omitted).

Plaintiff Jamil argues that Defendants, by using the apparatus of the state courts to bring a criminal contempt proceeding, became state actors who can be liable under Section 1983. Thus, Jamil's argument, if accepted, would mean that all state-court litigants who initiate criminal contempt proceedings become state actors who are susceptible to liability under Section 1983. The Second Circuit has considered and rejected this argument, holding that defendants' invocation of New York courts to seek a contempt order "does not constitute joint participation so as to satisfy

the statutory requirement under § 1983 that there be a state actor." *Dahlberg v. Becker,* 748 F.2d 85, 93 (2d Cir. 1984) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 939 n.21 (1982)). Simply stated, "private misuse of a state statute," such as the New York Judiciary Law, which contains the remedy for criminal contempt, "does not describe conduct that can be attributed to the State[.]" *Lugar,* 457 U.S. at 940-41. Because private parties' use of a state criminal contempt statute does not convert them into state actors for the purposes of Section 1983, Plaintiff cannot show that that any Defendant in this action acted under color of state law. The Court therefore dismisses, for failure to state a claim, all claims under Section 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## C.    Foreign Agent Registration Act ("FARA")

Plaintiff Jamil seeks relief under FARA, 22 U.S.C. §§ 611–621, which "requires all agents of foreign principals to file detailed registration statements, describing the nature of their business and their political activities." *Meese v. Keene,* 481 U.S. 465, 469 (1987). The Court must first consider whether FARA contains a private right of action under this statute.

In *Cort v. Ash,* 422 U.S. 66 (1975), the Supreme Court established a four-factor test to determine whether a federal statute creates an implied right of action: (1) whether the statute was enacted to benefit a special class; (2) whether the drafters intended to create a private right of action; (3) whether a private right of action would be consistent with the purposes of the statute; and (4) whether the cause of action is one not traditionally relegated to the states. "In determining whether to infer a private cause of action from a federal statute, [the] focal point is Congress' intent in enacting the statute." *Thompson v. Thompson,* 484 U.S. 174, 179 (1988); *see also McClellan v. Cablevision of Conn., Inc.,* 149 F.3d 161, 164 (2d Cir. 1998) (noting that the Supreme Court has refocused the *Cort* analysis to emphasize the importance of congressional intent). In the context of federal laws, "[t]he person seeking a private remedy bears the burden of demonstrating that

8

Congress intended to make one available." *New York City Envtl. Justice Alliance v. Giuliani*, 214 F.3d 65, 73 (2d Cir. 2000).

The Court has closely reviewed the text of FARA and concludes that Congress did not intend to create a private right of action under that statute. First, and most importantly, the statute shows that Congress intended for the Attorney General, not private litigants, to enforce FARA. *See An v. Despins*, No. 22-CV-10062 (VEC), 2023 WL 4931832, at *3 (S.D.N.Y. Aug. 2, 2023) (dismissing claim brought pursuant to FARA because it "vests the Attorney General with the exclusive authority to prosecute violations of the registration requirement, and there is no indication that Congress intended to create a private right of action"); *Meng v. Xinhuanet Co., Ltd.*, 16-CV-6127 (ER), 2017 WL 3175609, at *3 (S.D.N.Y. July 25, 2017) (dismissing the private plaintiff's FARA claim because neither the statutory text nor legislative history suggested congressional intent to provide a private cause of action). Second, the statute does not show a congressional intent to benefit a particular class of people. Rather, the purpose of the statute is "[t]o protect the national defense, internal security, and foreign relations to the United States," *Meese*, 481 U.S. at 469, which is a benefit conferred far beyond a special class of people, *see Alexander v. Sandoval*, 532 U.S. 275, 288 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." (internal quotation marks omitted)). It is therefore clear that FARA does not contain a private right of action. *See An*, 2023 WL 4931832, at *3; *Meng*, 2017 WL 3175609, at *3.

Because the *Cort* factors do not weigh in Plaintiffs' favor, the Court finds that FARA did not create a private right of action. The Court therefore dismisses all claims under FARA for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

9

**D.      Foreign Corrupt Practices Act ("FCPA")**

Plaintiff Jamil also asserts claims under the FCPA, 15 U.S.C. §§ 78dd-1—78dd-3, which "was enacted to promote ethical business practices in foreign commerce and to deter corrupt practices such as bribery and kickbacks." *United States of Am. v. Hwa*, 161 F.4th 127, 131 (2d Cir. 2025). Similar to the Court's analysis of Plaintiff Jamil's FARA claim above, the Court must first consider whether there is a private right of action under the FCPA by applying the *Cort* factors.

The Court has closely reviewed the text of the FCPA and concludes that Congress did not intend to create a private right of action to enforce it. First, the text of the statute contains no explicit provision for a private right of action, although it does provide for civil and criminal penalties, *see* 15 U.S.C. §§ 78dd–2(g), 78dd–3(e), 78ff(c), and, like FARA, permits the Attorney General to seek injunctive relief, *see id.* §§ 78dd–2(d), 78dd–3(d). Overall, "the structure of the statute, by focusing on public enforcement, tends to indicate the absence of a private remedy." *Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014). For these reasons, the Second Circuit has held that the FCPA does not contain a private right of action. *See id.*, 768 F.3d at 170–71.

For those reasons, the Court concludes that the FCPA does not contain a private right of action. Plaintiff Jamil therefore fails to state a claim under that statute. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**E.      Supplemental jurisdiction declined**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed

the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims that Plaintiff Jamil may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**F.    Leave to amend denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in the complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court abstains from exercising jurisdiction of Plaintiff's claims for injunctive relief, under the *Younger* abstention doctrine. Additionally, Plaintiff's attempted federal claims do not provide a private right of action.

The complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment in this action.

**SO ORDERED.**

Dated:  JUN 1 0 2026
     New York, New York

                   GEORGE B. DANIELS
                   United States District Judge